## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
MONTE-CARLO COUNTRY CLUB and          :
SOCIETE MONEGASQUE POUR               :       Civil Action No.   07-0198 (GMS)
L'EXPLOITATION DU TOURNOI DE TENNIS, :
                                      :
                Plaintiffs,           :
                                      :
        against                       :
                                      :
ATP TOUR, INC., ETIENNE DE VILLIERS, and :
CHARLES PASARELL,                     :
                                      :
                Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

## ANSWER AND AFFIRMATIVE DEFENSES

Defendants ATP Tour, Inc. ("ATP"), Etienne de Villiers ("Mr. de Villiers"), and Charles M. Pasarell, Jr. ("Mr. Pasarell") (collectively "Defendants"), by their undersigned attorneys Proskauer Rose LLP and Ashby & Geddes, hereby file their Answer and Affirmative Defenses to the Complaint filed by Plaintiffs Monte-Carlo Country Club and Societe Monegasque Pour L'Exploitation Du Tournoi De Tennis (collectively, "Monte Carlo" or "Plaintiffs"), and state as follows:

1.      Defendants admit that Plaintiffs purport to seek the alleged relief, but deny that Plaintiffs are entitled to any relief.  Defendants deny each remaining allegation in paragraph 1.

2.      Defendants deny the allegations in paragraph 2, except admit that ATP is a Delaware non-profit membership corporation whose members are tennis tournaments and players and that ATP operates a tennis circuit and governs its members by, among other things, sanctioning, scheduling, and setting professional standards for its members.

3.      Defendant denies the allegations in paragraph 3, except admits that ATP is in the

process of formulating changes to its current tour schedule and structure, and the plan as currently drafted, which is not final, sometimes has been referred to as the "Brave New World" plan.

4.      Defendants deny the allegations in paragraph 4.

5.      Defendants deny the allegations in paragraph 5.

6.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.

7.      Defendants deny the allegations in paragraph 7.

8.      Defendants deny the allegations in paragraph 8.

9.      Defendants admit that Plaintiffs purport to seek such relief, but deny that Plaintiffs are entitled to any relief.  Defendants deny each remaining allegation in paragraph 9.

10.      The allegations of paragraph 10 state legal conclusions as to which no answer is required.

11.      The allegations of paragraph 11 state legal conclusions as to which no answer is required.  To the extent that the averments of paragraph 11 are construed to assert allegations of fact, Defendants deny the allegations in paragraph 11.

12.      The allegations of paragraph 11 state legal conclusions as to which no answer is required.

13.      Defendants admit that Messrs. de Villiers and Pasarell (collectively the "Individual Defendants") are subject to the jurisdiction of this Court.

14.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14, except admit that Monte-Carlo Country Club is a member of ATP, but deny that it owns a sanction for what is currently known as the ATP

Masters Series Monte-Carlo professional men's tennis tournament.

15.    Defendants admit that ATP is a Delaware non-profit membership corporation with its headquarters in Ponte Vedra Beach, Florida, and admit that ATP conducts business throughout the United States and in Delaware to the extent that ATP is a Delaware corporation.

16.    Defendants deny the allegations in paragraph 16.

17.    Defendants admit the allegations of paragraph 17.

18.    Defendants admit that Mr. Pasarell is a tournament director of an ATP member tournament, has a financial interest in that tournament, is a resident of California, and is a member of the ATP Board of Directors elected by certain Tournament class members, and deny the remainder of the allegations in paragraph 18.

19.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20, except admit that the players listed in the second sentence in paragraph 20 have played at the Monte Carlo tournament and that multiple top clay court players have played in the Monte Carlo tournament.

21.    Defendants admit the allegations in paragraph 21.

22.    Defendants deny the allegations in paragraph 22, except admit that the Monte Carlo tournament has held an ATP Masters Series Level sanction and has been held in Europe in the spring.

23.    Defendants deny the allegations in paragraph 23, except admit that, under ATP's ranking system, players have been eligible to earn Masters Series Level ranking points for participating in the Monte Carlo tournament, that the ranking points system is designed to

enhance ATP tennis, including, for example, by attracting highly ranked players and to create a competitive athletic environment throughout the tennis season, that the ATP ranking system, sanctioning system, and calendar have, therefore, enhanced Monte Carlo's ability to attract highly ranked players, that certain players have won both the Monte Carlo tournament and the French Open in the same year, that certain players live in Monaco, and that players from multiple countries have participated in the Monte Carlo tournament.

24.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24.

25.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25, except admit that Rolex and BNP Paribas, among others, have been sponsors of the Monte Carlo tournament, and admit that the Monte Carlo tournament has increased its prize money when mandated by the ATP.

26.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26, except admit that, pursuant to its Bylaws and Rules, ATP has since its inception had various tiers of tournaments, and that ATP has sought to benefit all of its members and men's professional tennis in structuring its ranking system, tiers, sanctioning system, calendar, and marketing, including of Masters Series Level events.

27.     Defendants deny the allegations in paragraph 27.

28.     Defendants deny the allegations in paragraph 28, except admit that, until the late 1960s, various prestigious tournaments only permitted amateur players to participate, at which point, such tournaments permitted professional players to participate, and further admit that the WCT was formed and operated various professional tournaments at or about that time, and deny knowledge or information sufficient to form a belief as to the truth of the allegations in the last

sentence of paragraph 28.

29.     Defendants admit the allegations in paragraph 29, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the last two sentences of paragraph 29.

30.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30, except admit that MIPCT and WCT were competitors and that MIPTC and WCT were involved in certain disputes and litigations well before the applicable statute of limitations in this action.

31.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, except admit that there was litigation involving at least Volvo and MIPTC well before the applicable statute of limitations in this action and admit that the litigation was settled and refers the Court to the decisions of the courts in the litigation for the procedural history of the case.

32.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 except: deny that the 1980s was a "period of extensive litigation" for men's professional tennis; deny the remainder of the first sentence of paragraph 32; admit that Hamilton Jordan sent a form letter to the Monte Carlo tournament in or about 1989, but deny that he "confirmed Monte Carlo's sanction for the new ATP Tour as a top-tier 'Championship Series' tournament," and respectfully refer the Court to the letter for a full statement of its contents; and admit that the initial "Championship Series Single Week" consisted of certain tournaments sanctioned by the ATP.

33.     Defendants deny the allegations of paragraph 33, except admit that, beginning in the early to mid-1990s, the ATP and the member tournaments, including Monte Carlo,

participated in television and marketing programs using various monikers, including at some point "the Super 9 Series," and admit the allegations in the last sentence in paragraph 33.

34.     Defendants deny the allegations of paragraph 34, except admit that the members of the ATP have had a longstanding interest in having a top-tier ATP tournament in Asia to benefit tennis fans and ATP's membership.

35.     Defendants deny the allegations of paragraph 35, except admit that ATP and the Masters Series Level tournaments have been and are parties to joint television and marketing agreements and have marketed the ATP's highest tier of sanctioned tournaments, including the Monte Carlo tournament, under various monikers from 2000 to present, the most current moniker being ATP Masters Series.

36.     Defendants admit the allegations in paragraph 36, but state that the ATP Bylaws also expressly state that one of ATP's purposes is "to sanction, schedule and operate one or more professional tennis tournaments," and respectfully refer the Court to the ATP Bylaws for its statement of ATP's purposes.

37.     Defendants deny the allegations in paragraph 37, except admit that ATP has a seven member Board of Directors that consists of (1) one Tournament representative of each of Europe, the Americas, and the International Group, (2) three Player representatives for each of Europe, the Americas, and the International Group, and (3) ATP's Executive Chairman/President of ATP, currently Mr. de Villiers.

38.     Defendants deny the allegations in paragraph 38, except admit that the player representatives on the Board of Directors are, in accordance with ATP's Bylaws, elected by the Player Council, which consists of ten voting members and two non-voting members who are elected, in accordance with ATP's Bylaws, by members of specified divisions of players, alumni,

and coaches, and respectfully refer the Court to the ATP Bylaws for a full statement of the criteria and processes for election of player representatives to ATP's Board of Directors.

39. Defendants deny the allegations in paragraph 39, except admit that, in accordance with the ATP Bylaws and Rules, ATP regulates and ranks players, establishes a tour calendar on an annual basis, and sanctions tournaments to participate in the ATP Tour at various levels, and admit the allegations in the second, third, and fourth sentences of paragraph 39, but state that player rankings also are based on success at the Grand Slam tournaments, that a player's ranking determines whether he is accepted directly into a tournament without the need to qualify for the tournament or entry though a "wildcard" draw, and that a player's ranking affects the seeding a player may receive at a tournament.

40. Defendants deny the allegations in paragraph 40, except admit that, from time to time, ATP and/or Master levels tournaments have utilized one or more bonus pools to encourage player participation in the Masters Series Level tournaments, that in certain years, but not all years, tournaments contributed to such bonus pools, and that, pursuant to the ATP Bylaws and Rules, ATP has the ability and discretion to penalize players for failing to appear in tournaments, and respectfully refer the Court to ATP's Bylaws and Rules for a statement of ATP's authority to impose such penalties.

41. Defendants deny the allegations of paragraph 41, except admit that, in accordance with ATP's Bylaws and Rules, ATP sanctions, schedules, and sets standards for various circuits of men's professional tennis within the ATP Tour, that pursuant to an agreement between the ATP and each of the Grand Slam tournaments, entry into the Grand Slam tournaments is determined in part by ATP player rankings, and that the ATP, ITF, and each of the Grand Slam tournaments are parties to an agreement that details the rights and obligations of those parties

with respect to the ATP's year-end Tennis Masters Cup, which features the top eight players on the tour, and respectfully refer the Court to ATP's Bylaws and Rules and to the relevant governing agreements for a full statement of their content.

42.     Defendants deny the allegations of paragraph 42, except admit that ATP takes into account the Grand Slams' schedule when setting its calendar, and admit that it also takes into account the factors listed in the second sentence of paragraph 42 in the scheduling and sanctioning of top-tier tournaments, but denies that these are the sole factors.

43.     Defendants deny the allegations in paragraph 43, except admit that the ATP currently sanctions the following four primary categories of men's professional tennis tournaments, with concomitant ranking points and minimum, but not maximum, levels of prize money: (1) the ATP Masters Series, (2) the International Series Gold, (3) the International Series, and (4) the Challenger Series.

44.     Defendants admit the allegations in paragraph 44 (understanding the "Date" to be the starting date of each identified tournament).

45.     Defendants deny the allegations of paragraph 45.

46.     Defendants deny the allegations of paragraph 46, except admit that ATP's Rules regulate the participation by ATP members in non-ATP events and respectfully refer the Court to the ATP Rulebook for a full statement of the rules relating to such "special events."

47.     Defendants deny the allegations of paragraph 47, except admit that, in June 2005, the ATP Board voted to appoint Mr. de Villiers to serve as the non-executive chairman of the ATP Board, to begin in fall 2005, and admit that in January 2006, the ATP Board appointed Mr. de Villiers as Executive Chairman and President of ATP.

48.     Defendants deny the allegations of paragraph 48, except admit that Plaintiffs

purport to quote from written statements by Mr. de Villiers and respectfully refer the Court to his actual statements for a full statement of their contents.

49.    Defendants deny the allegations of paragraph 49, except admit that ATP conducted studies concerning the structure and competitiveness of the ATP Tour and admit that Plaintiffs purport to quote from one study and respectfully refer the Court to the actual studies for a full statement of their contents.

50.    Defendants deny the allegations of paragraph 50, except admit that Mr. de Villiers made the statements alleged in paragraph 50, but state that the statements are taken out of context both as to substance and chronology and respectfully refer the Court to his actual statements for a full statement of their contents.

51.    Defendants deny the allegations of paragraph 51, except admit that, in 2006, ATP considered potential plans to restructure the spring and autumn portions of its calendar, but deny that any final determination or plan was concluded at that time.

52.    Defendants deny the allegations of paragraph 52, except admit that, in or around June 2006, the ATP Board of Directors determined that any restructuring of the tour would not be implemented until 2009 at the earliest and discussed various possible aspects of a restructuring, including various potential minimum tournament requirements for highly ranked players, and that Plaintiffs purport to quote from documents concerning Board activity during this timeframe, but respectfully refer the Court to the actual documents for a full statement of their contents.

53.    Defendants deny the allegations of paragraph 53, except admit that, in or around August 2006, there was agreement among ATP Board members that, if ATP were to restructure the tour in a manner that resulted in current Masters Series Level tournaments being given a

sanction for a level lower than the highest sanction level, it might be appropriate to provide certain compensation in connection with the change in sanction level, and that Plaintiffs purport to quote from documents concerning Board activity during this timeframe, but respectfully refer the Court to the actual documents for a full statement of their contents.

54.      Defendants deny the allegations of paragraph 54, except admit that, in or around August 2006, the ATP Board considered a proposed potential approach to restructure the ATP Tour calendar that included, among other things, having one European Masters and one European Masters Combined tournament in the spring clay-court season and a "Race to Tennis Masters Cup" including one Chinese Masters Combined tournament and one European Indoor Masters tournament, and that Plaintiffs purport to quote from documents concerning that proposal, but respectfully refer the Court to the actual documents for a full statement of their contents.

55.      Defendants deny the allegations of paragraph 55, except admit that, in or around August 2006, the ATP Board considered a proposed potential approach to restructure the ATP Tour calendar that included, among other things, potential minimum tournament requirements for highly ranked players, and that Plaintiffs purport to quote from documents concerning that proposal, but respectfully refer the Court to the actual documents for a full statement of their contents.

56.      Defendants deny the allegations in paragraph 56, except admit that, in or around September 2006, there was correspondence among the European tournament directors, including Mr. Franulovic on behalf of the Monte Carlo tournament, and Mr. de Villiers concerning certain aspects of the restructuring proposals being considered by the ATP Board of Directors and that such correspondence reflected the support by the European tournament directors for certain

aspects of the proposals and opposition to other aspects and respectfully refer the Court to those letters for a full statement of their contents.

57.     Defendants deny the allegations of paragraph 57, except admit that, in or around October and November 2006, members of the ATP Board of Directors considered and discussed a potential requirement that, if the ATP restructured the tour, certain highly-ranked players be required to participate in eight-of-eight Masters level tournaments, as requested by, among others, the Monte Carlo and Hamburg tournaments, and that Plaintiffs purport to quote from documents concerning those discussions, but respectfully refer the Court to the actual documents for a full statement of their contents.

58.     Defendants admit the allegations of paragraph 58, except deny that the description of the proposal is complete and deny that the plan was final as of November 2006, and respectfully refer the Court to the actual documents for a full statement of their contents.

59.     Defendants admit the allegations of paragraph 59, except deny that the description of the proposal is complete, deny that the plan was final as of November 2006, and deny to the extent that it implies that any proposed sanctions would be inappropriate, and respectfully refer the Court to the actual presentation for a full statement of its contents.

60.     Defendants deny the allegations of paragraph 60.

61.     Defendants deny the allegations of paragraph 61, except admit that in or around November 2006, the Board considered the competitive and financial impacts of a proposal to restructure the ATP Tour and discussed, among other things, that, if ATP were to restructure the tour in a manner that resulted in current Masters Series Level tournaments being given a sanction for a level lower than the highest sanction level, it might be appropriate to provide certain compensation in connection with the change in sanction level, and admit that Plaintiffs purport to

quote from documents concerning a presentation made at an ATP Tournament Directors'
meeting, and respectfully refer the Court to the actual documents for a full statement of their
contents.

62.    Defendants admit the allegations of paragraph 62, and respectfully refer the Court
to the actual financial review for a full statement of its contents.

63.    Defendants deny the allegations in paragraph 63.

64.    Defendants deny the allegations of paragraph 64, except admit that an agenda was
prepared for the November 2006 board meeting addressing, among other things, potential
implications of the restructuring proposal being considered by the ATP Board, and respectfully
refer the Court to the agenda for a full statement of its contents and to the actual documentation
of the November 2006 Board meeting for a statement of the matters discussed.

65.    Defendants deny the allegations of paragraph 65, except admit that, in January
2007, there was correspondence among Mr. Franulovic and Mr. de Villiers concerning a
potential restructuring of the ATP Tour, that Mr. Franulovic was and is an elected Tournament
representative on the ATP Board of Directors, that Mr. Franulovic was asked to absent himself
from that portion of the ATP Board meeting in January 2007 in which the Board discussed the
topics raised in Mr. Franulovic's correspondence with Mr. de Villiers, and respectfully refer the
court to the correspondence for a full statement of its contents.

66.    Defendants deny the allegations of paragraph 66, except admit that, on or about
January 18, 2007, the ATP Board of Directors voted to approve a plan to restructure the format
and calendar of the ATP Tour beginning in 2009 for the Masters 1000 tournaments, which plan
is not final, and that Mr. Franulovic was the only Board member to vote against the plan.

67.    Defendants admit that, as part of the current restructuring plan, which is not yet

final, among other things, the Board of Directors approved a plan in January 2007 to have eight

Masters 1000 events beginning in 2009, including one hard-court combined event in China after

the U.S. Open and one clay-court combined event in the spring before Roland Garros, and that

Plaintiffs purport to quote from documentation concerning the January 18, 2007 ATP Board of

Directors Meeting and respectfully refer the Court to the actual documentation for a full

statement of their contents.

68.    Defendants admit the allegations of paragraph 68, except deny to the extent that it

implies that any proposed sanctions would be inappropriate, and respectfully refer the Court to

the actual documentation for a full statement of their contents.

69.    Defendants admit that, as part of the current restructuring plan, which is not yet

final, among other things, the Board of Directors approved a plan in January 2007 to create a

bonus pool to be implemented beginning in 2009 and to be jointly funded by ATP and

tournaments.

70.    Defendants admit that as part of the current restructuring plan, which is not yet

final, among other things, the ATP Board voted at the January 18, 2007 board meeting to

approve a ranking system to be implemented beginning in 2009, admit that Plaintiffs purport to

quote documentation concerning the January 18, 2007 ATP Board of Directors meeting and

respectfully refer the Court to the actual documentation for a full statement of their contents,  and

further state that the ATP Board voted in March 2007 to consider different approaches to the

ranking system.

71.    Defendants admit that, as part of the current restructuring plan, which is not yet

final, among other things, the Board of Directors approved a plan in January 2007 to provide ten-

year "category protection" to Masters 1000 events beginning in 2009 (subject to certain

termination conditions), and admit that Plaintiffs purport to quote documentation concerning the January 18, 2007 ATP Board of Directors meeting and respectfully refers the Court to the actual documentation for a full statement of their contents.

72.    Defendants deny the allegations of paragraph 72, except admit that, as part of the current restructuring plan, which is not yet final, among other things, the Board of Directors approved in January 2007 a plan to negotiate the award of the proposed Chinese Masters 1000 sanction.

73.    Defendants deny the allegations of paragraph 73 (including the allegations in paragraph 73(c) with respect to prize money and alleged "capping" of such prize money and deny that there is any final plan with respect to the number of Open 500 events or player participation in or point ranking for such events) except: admit that, the current restructuring plan, which is not yet final, would result in a tour with 8 Masters 1000 tournaments, one of which would be a Masters 1000 Tournament in China, and would result in modifications to the sanctions for current European Masters Series Level tournaments depending on the outcome of the application process; admit the allegations in paragraph 73(b); admit that a Masters 1000 sanction was awarded to an entity based in Shanghai, China after substantial negotiation (subject to certain conditions subsequent); and admit that the ATP Board voted at the January 18, 2007 board meeting to invite certain of the current Masters Series tournaments to apply for Masters 1000 sanctions; admit that the current restructuring plan, which is not yet final, will, if implemented, require certain changes to the current ATP Tour calendar; admit that, as part of the restructuring plan and in an organized strategy to enhance the reach and exposure of the ATP tennis circuit through television and other media opportunities for the benefit of all ATP members, the ATP Board voted to authorize joint approaches to broadcast rights, not only for the

Masters 1000 tournaments, but also for the Open 500 tournaments.

74.    Defendants deny the allegations in paragraph 74, except admit that the final details of the restructuring plan have yet to be determined, that certain tournaments were initially asked to submit applications by March 16, 2007 if they were interested in receiving a Masters 1000 sanction, that the applications materials describe the application process and that a tournament operator's finances and ability to pay higher prize money or other fees could be factors in the selection process, and that the ATP Board is considering the applications, but that no final determination has yet been made on the applications.

75.    Defendants deny the allegations in paragraph 75, except admit that the application process has been accurately described as "open and transparent."

76.    Defendants deny the allegations in paragraph 76, except admit that, in the course of considering potential restructuring of the ATP Tour, ATP has from time to time circulated draft calendars for discussion purposes only.

77.    Defendants deny the allegations in paragraph 77.

78.    Defendants deny the allegations in paragraph 78, except admit that ATP management drafted a February 2007 proposal concerning ATP Open 500 tournaments, that such proposal accurately reflected that no final decisions had been made, and respectfully refer the Court to the proposal for a full statement of its contents.

79.    Defendants deny the allegations in paragraph 79, except admit that a presentation was made at the March 2007 ATP board meeting concerning the restructuring plan, which is not yet final, that the presentation accurately reflected that no final decisions had been made, and respectfully refer the Court to the presentation for a full statement of its contents.

80.    Defendants deny the allegations in paragraph 80, except admit that at the March

27, 2007 ATP board meeting, the Board approved an agreement with News Sports and

Entertainment (Shanghai) Ltd. for the operation of an ATP Masters 1000 tournament in

Shanghai, China beginning in 2009, subject to the final development and full implementation of

ATP's 2009 format changes, and admit that the restructuring plan, which is not yet final,

includes incentives and penalties that are needed to ensure its success for the benefit of all ATP

members, and respectfully refer the Court to the agreement with the Shanghai tournament for its

full contents and provisions.

81.     Defendants deny the allegations in paragraph 81.

82.     Defendants deny the allegations in paragraph 82, except admit that Mr. Pasarell

owns an interest in the Indian Wells tournament, and as such, has a financial interest in the

success of that tournament, as well as in the success of the ATP Tour, of which Indian Wells is a

part.

83.     Defendants deny the allegations in paragraph 83, except admit that representatives

from ATP and the Monte Carlo and Hamburg tournaments discussed a number of issues

including financial compensation to the two tournaments.

84.     Defendants deny the allegations in paragraph 84, except deny knowledge or

information sufficient to form a belief as to the truth of the allegations with respect to Monte

Carlo's state of mind.

85.     Defendants deny the allegations in paragraph 85, except admit that both the

Monte Carlo and Hamburg tournament operators submitted applications for a Masters 1000

sanction.

86.     Defendants deny the allegations in paragraph 86, except admit that Plaintiffs

purport to quote from an article titled "A Drive With Rafa Reveals A Man On A Mission Of

Resistance" by Neil Harman for the Times (UK) Online, and respectfully refer the Court to the article for a full statement of its contents.

87.    Defendants deny the allegations of paragraph 87, except admit that on or about March 20, 2007, Mr. de Villiers was presented with a letter purportedly signed by a number of players discussing a number of issues, including the proposed restructuring of the ATP Tour, which was not accurately described, admit that the letter contains the quoted phrases, but respectfully refer the Court to the letter for a full statement of its contents.

88.    Defendants deny the allegations of paragraph 88, except admit that the letter contains the quoted phrases and that Mr. de Villiers authored a "Chairman's Report," which summarized his meeting with the players, and respectfully refer the Court to the letter and the report for a full statement of their contents.

89.    Defendants deny the allegations of paragraph 89, except admit that an individual purporting to represent the operator of one of the current Masters Series tournaments sent a letter to Mr. de Villiers dated March 22, 2007 that inaccurately described the proposed restructuring of the ATP Tour and made unfounded allegations concerning the proposed restructuring, and respectfully refer the Court to that letter for a full statement of its contents.

90.    Defendants admit that Hamburg filed the complaint described in paragraph 90, but deny that Hamburg is entitled to any relief.

91.    Defendants deny the allegations in paragraph 91, except admit that Plaintiffs purport to quote from an article titled "Clay-Court Events Might Lose Some Clout," by Charles Bricker for the Sun Sentinel.com, and respectfully refer the Court to the article for a full statement of its contents.

92.    Defendants deny the allegations in paragraph 92.

93.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93.

94.    Defendants deny the allegations in paragraph 94.

95.    Defendants deny the allegations in paragraph 95.

96.    Defendants deny the allegations in paragraph 96.

97.    Defendants deny the allegations in paragraph 97.

98.    Defendants deny the allegations in paragraph 98.

99.    Defendants deny the allegations in paragraph 99.

100.    Defendants deny the allegations in paragraph 100.

101.    Defendants deny the allegations in paragraph 101.

102.    Defendants deny the allegations in paragraph 102.

103.    Defendants deny the allegations in paragraph 103.

104.    Defendants deny the allegations in paragraph 104.

105.    Defendants deny the allegations in paragraph 105.

106.    Defendants deny the allegations in paragraph 106, except admit that Plaintiffs purport to quote from an article titled "Rescuing Rotterdam? Pullout Sanctions Proposed," by Bill Scott for Tennis.com, and respectfully refer the Court to the article for a full statement of its contents.

107.    Defendants deny the allegations in paragraph 107, except admit that the current plan, which is not yet final, contemplates incentives and penalties to ensure that top players play all Masters 1000 events, as requested by, among others, the Monte Carlo and Hamburg tournaments.

108.    Defendants deny the allegations in paragraph 108.

109.    Defendants deny the allegations in paragraph 109.

110.    Defendants deny the allegations in paragraph 110.

111.    Defendants deny the allegations in paragraph 111, except admit that players are unable to play tournaments every week of the tennis season, and admit that plaintiffs have listed some, but not all, factors that may influence a player's choices in picking which tournaments to play.

112.    Defendants deny the allegations in paragraph 112, except admit that the current plan, which is not yet final, contemplates requiring certain highly ranked players to play in all eight Masters 1000 tournaments, and if they qualify, the ATP Tennis Masters Cup.

113.    Defendants deny the allegations in paragraph 113, except admit that the current plan, which is not yet final, contemplates requiring certain highly ranked players to play in at least four of the ATP Open 500 tournaments per season and that the point results from a player's four best tournaments will count towards a player's ranking, that various potential levels of player participation in the Open 500 tournaments have been projected, and admit that Plaintiffs purport to quote from an article titled "Blake, Roddick Slam Sanctions Plan For ATP Absentees" by Bill Scott for the Times (UK), and respectfully refer the Court to the article for a full statement of its contents.

114.    Defendants deny the allegations of paragraph 114, except admit that the ATP has rules regarding special events, and respectfully refer the Court to the ATP Rulebook for a full statement of the rules relating "special events."

115.    Defendants deny the allegations in paragraph 115.

116.    Defendants deny the allegations in paragraph 116.

117.    Defendants deny the allegations in paragraph 117.

118.    Defendants deny the allegations in paragraph 118.

119.    Defendants deny the allegations in paragraph 119, except admit that the ATP Board decided in January 2007 to negotiate the award of a Masters 1000 sanction to a Chinese entity, and, in March 2007, awarded a sanction to the Shanghai tournament, subject to final approval of the restructuring plan.

120.    Defendants deny the allegations in paragraph 120.

121.    Defendants deny the allegations in paragraph 121.

122.    Defendants deny the allegations in paragraph 122, except admit that the current plan, which is not yet final, contemplates scheduling the Shanghai tournament after the U.S. Open, and opened to application a slot for a European clay-court combined event in the weeks preceding the French Open.

123.    Defendants deny the allegations in paragraph 123.

124.    Defendants deny the allegations in paragraph 124, except admit that the current plan, which is not yet final, contemplates a unified approach to certain broadcast and media rights for ATP Masters 1000 tournaments and Open 500 tournaments through Tennis Properties Ltd., doing business as ATP Media, which is owned by ATP and the current Masters Series Level tournaments, including Monte Carlo and Hamburg.

125.    Defendants deny the allegations in paragraph 125.

126.    Defendants deny the allegations in paragraph 126.

127.    Defendants deny the allegations in paragraph 127.

128.    Defendants deny the allegations in paragraph 128.

129.    Defendants deny the allegations in paragraph 129, except admit that the current plan, which is not yet final, contemplates that the tournaments named Masters 1000 tournaments

will be granted sanctions for a ten year term (subject to prior termination under certain

circumstances) and also contemplates potential penalties if certain highly ranked players fail to

play in eight of eight of the ATP Masters 1000 tournaments.

130. Defendants deny the allegations in paragraph 130.

131. Defendants deny the allegations in paragraph 131.

132. Defendants deny the allegations in paragraph 132.

133. Defendants deny the allegations in paragraph 133.

**First Claim for Relief**

134. Repeat their answers to paragraphs 1 through 133 above as if fully set forth

herein.

135. Defendants deny the allegations in paragraph 135.

136. Defendants deny the allegations in paragraph 136.

137. Defendants deny the allegations in paragraph 137.

138. Defendants deny the allegations in paragraph 138.

**Second Claim for Relief**

139. Repeat their answers to paragraphs 1 through 138 above as if fully set forth

herein.

140. Defendants deny the allegations in paragraph 140.

141. Defendants deny the allegations in paragraph 141.

142. Defendants deny the allegations in paragraph 142.

143. Defendants deny the allegations in paragraph 143.

**Third Claim for Relief**

144. Repeat their answers to paragraphs 1 through 143 above as if fully set forth

herein.

      145.    Defendants deny the allegations in paragraph 145.

      146.    Defendants deny the allegations in paragraph 146.

      147.    Defendants deny the allegations in paragraph 147.

      148.    Defendants deny the allegations in paragraph 148.

      149.    Defendants deny the allegations in paragraph 149.

**Fourth Claim for Relief**

      150.    Repeat their answers to paragraphs 1 through 149 above as if fully set forth herein.

      151.    Defendants deny the allegations in paragraph 151.

      152.    Defendants deny the allegations in paragraph 152.

      153.    Defendants deny the allegations in paragraph 153.

      154.    Defendants deny the allegations in paragraph 154.

**Fifth Claim for Relief**

      155.    Repeat their answers to paragraphs 1 through 154 above as if fully set forth herein.

      156.    The allegations of paragraph 156 state legal conclusions as to which no answer is required.

      157.    Defendants deny the allegations in paragraph 157.

      158.    Defendants deny the allegations in paragraph 158.

      159.    Defendants deny the allegations in paragraph 159.

      160.    Defendants deny the allegations in paragraph 160.

## **AFFIRMATIVE DEFENSES**

1.      The Complaint fails in whole or in part to state a claim for relief.

2.      The Complaint and the relief sought therein are barred because the alleged conduct will not lessen, destroy, or prevent competition, tend to create a monopoly, or create a dangerously probability of creating a monopoly in any relevant market.

3.      The Complaint and the relief sought therein are barred because the procompetitive benefits of the conduct alleged outweigh any alleged anticompetitive effect.

4.      The Complaint and the relief sought therein are barred, in whole or part, because Defendant ATP Tour, Inc. is a single entity and is legally incapable of conspiring with its officers, directors, or members.

5.      The Complaint and the relief sought therein are barred to the extent the Plaintiffs seek damages under a *per se* theory; the alleged conduct is not appropriately analyzed by a *per se* analysis.

6.      The Complaint and the relief sought therein are barred to the extent the Plaintiffs seek damages under a "quick look" theory; the alleged conduct is not appropriately analyzed by a "quick look" analysis.

7.      The Complaint and the relief sought therein under Section 1 of the Sherman Act are barred because Defendant ATP Tour, Inc. was and is lawfully formed to enhance efficiencies in and the overall standing and profitability of men's professional tennis for the benefit of player and tournament members; as such, ATP's decisions with respect to the pricing and output of its product, ATP tennis, cannot form the basis for any claim under Section 1 of the Sherman Act.

8.      The Complaint and the relief sought therein are barred because there is no causal connection between the alleged conduct and any alleged harm to competition or to consumers.

9.    The Complaint and the relief sought therein are barred because Plaintiffs have suffered no antitrust injury as a result of the alleged conduct

10.    The Complaint and the relief sought therein are barred to the extent that Plaintiffs are seeking to recover claims for indirect injuries.

11.    The Complaint and the relief sought therein are barred, in whole or in part, because Plaintiffs lack standing to bring these claims.

12.    To the extent that Plaintiffs are seeking damages for both direct and indirect purchases and effects, these claims should be barred as seeking duplicative recovery.

13.    The Complaint and the relief sought therein are barred, in whole or in part, because Plaintiffs have failed to mitigate damages, if any, allegedly suffered as a result of the alleged conduct.

14.    The Complaint and the relief sought therein are barred by the doctrines of laches, waiver, estoppel, unclean hands, and other applicable equitable doctrines, including because Plaintiffs have benefited from, requested, endorsed, and/or ratified the very conduct of which they complain.

15.    The Complaint and the relief sought therein are barred because Defendants' conduct was justified or privileged.

16.    The Complaint and the relief sought therein are barred, in whole or part, by the applicable statute of limitations.

17.    The Complaint and the relief sought therein are barred because the claims are premature and not ripe for review.

18.    The Complaint and the relief sought therein are barred because, pursuant to 15 U.S.C. § 6a, the Sherman and Clayton Acts, 15 U.S.C. § 1-7 do not apply to some or all of the

conduct alleged to be unlawful.

19.     Some or all of Plaintiffs' alleged damages are speculative and not recoverable.

20.     Plaintiffs are not entitled to any equitable relief because, assuming that Plaintiffs were able to prove one or more of their alleged claims for relief, Plaintiffs have an adequate remedy at law.

21.     The Complaint and the relief sought therein are barred because the practices challenged in the complaint are reasonable and lawful because they are ancillary to the legitimate structure and purpose of ATP.

22.     The Complaint and the relief sought therein are barred because Defendants have acted lawfully and reasonably to advance and enhance the staging, production, and distribution of the sport of tennis worldwide and to ensure the ability of ATP and tennis to compete effectively with other sports and entertainment alternatives.

23.     To the extent that the Complaint alleges claims against Messrs. De Villiers and Pasarell, the Complaint and the relief sought therein are barred because each has carried out his duties as an officer or director of ATP in good faith, in a manner each reasonably believed to be in or not opposed to the best interests of ATP, and based on a reasonable investigation of the relevant facts and circumstances.

24.     Defendants reserve the right to assert additional defenses that they learn of through discovery or other investigation.

Dated:      May 4, 2007                      ASHBY & GEDDES

Lawrence C. Ashby (I.D. #468)
Philip Trainer, Jr. (I.D. #2788)
Carolyn Hake (I.D. #3839)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
lashby@ashby-geddes.com
ptrainer@ashby-geddes.com
chake@ashby-geddes.com

PROSKAUER ROSE LLP
Bradley I. Ruskin
Colin A. Underwood
Jennifer R. Scullion
Jordan B. Leader
1585 Broadway
New York, NY  10036-8299
Phone: (212) 969-3000

*Attorneys for Defendants*

180244.1

-26-