IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| DEUTSCHER TENNIS BUND (GERMAN TENNIS FEDERATION) and ROTHENBAUM SPORTS GMBH TENNIS, : : : : | Civil Action No. 07-178 (GMS) |
| : | |
| Plaintiffs, : | |
| : | |
| - against - : | |
| : | |
| ATP TOUR, INC., JOHN DOE 1, JOHN DOE 2 : JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, : JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, and : JOHN DOE 9, : | |
| : | |
| Defendants. : | |

---

| | |
|---|---|
| MONTE-CARLO COUNTRY CLUB and SOCIÉTÉ MONÉGASQUE POUR L'EXPLOITATION DU TOURNOI DE TENNIS, : : : : | Civil Action No. 07-198 (GMS) |
| : | |
| Plaintiffs, : | |
| : | |
| - against - : | |
| : | |
| ATP TOUR, INC., ETIENNE DE VILLIERS, : and CHARLES PASARELL, : | |
| : | |
| Defendants. : | |

---

## JOINT STATUS REPORT

Pursuant to the Court's Notice of Scheduling Conference dated May 23, 2007,

Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.2(b), the parties in *Deutscher*

*Tennis Bund et al. v. ATP Tour, Inc., et al.*, 07cv178 (GMS) (the "Hamburg Litigation") and the

parties in *Monte-Carlo Country Club, et al. v. ATP Tour, Inc.*, 07cv198 (GMS) (the "Monte-

Carlo Litigation") submit this Joint Status Report in preparation for the Status and Scheduling Tele-Conference before this Court set for June 15, 2007 at 11:00 a.m.

On or about May 3, 2007, the parties jointly submitted to the Court a Proposed Coordinated Scheduling Order reflecting the parties' agreement that the Hamburg and Monte-Carlo Litigations should be coordinated for all discovery purposes on an expedited pre-trial schedule with firm dates that will enable both cases to be tried within the first third of 2008. The Proposed Coordinated Scheduling Order addresses many of the discovery and scheduling issues in this Joint Report, and is incorporated herein by reference where appropriate. A copy of the Proposed Coordinated Scheduling Order is attached as Exhibit A hereto for the Court's convenience.

1.    **Jurisdiction and Service.**    These are civil actions asserting claims under the federal antitrust laws and Delaware state law. The Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question), 1337 (antitrust claims), and 1367 (supplemental jurisdiction), as well as 15 U.S.C. § 26. ATP Tour, Inc. ("ATP"), Etienne de Villiers and Charles Pasarell (collectively "Defendants") do not contest personal jurisdiction or service of process for the purposes of the Monte Carlo or Hamburg Litigations.

2.    **Substance of the Action**.    Deutscher Tennis Bund (German Tennis Federation), Rothenbaum Sports GMBH Tennis, Monte-Carlo Country Club, and Société Monégasque pour L'Exploitation du Tournoi de Tennis (collectively "Plaintiffs") allege claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1 et seq., and also claim breach of fiduciary duties arising under Delaware law. Plaintiffs seek injunctive, declaratory, and monetary relief on these claims. The plaintiffs in the Hamburg Litigation also assert claims for

2

tortious interference with contract tortious interference with business relations arising under Delaware law.

**Plaintiffs' Allegations**: Plaintiffs allege that the ATP and certain of its members, officers, and directors are horizontal competitors that have conspired and agreed to unreasonably restrain trade in violation of Section 1 of the Sherman Act, and to monopolize and maintain the ATP's monopoly power in various markets relating to the production and staging of professional men's tennis tournaments, by implementing a new plan, called the "Brave New World" plan, to restructure the calendar and competitive landscape of professional men's tennis tournaments beginning in the 2009 tennis season.

Specifically, Plaintiffs allege that the Brave New World, unless enjoined, will limit output in the relevant markets by reducing the number of top-tier professional men's tennis tournaments; restrain competition among tournaments for the services of top tennis players by imposing mandatory player restrictions and penalties that effectively eliminate players' ability to participate in tournaments excluded from the unlawful cartel; fix prices by capping the amount of prize money and other compensation that certain tournaments may offer to compete for the services of top players; boycott potential competitors by collectively refusing to deal with qualified tournaments that do not meet or abide by the terms of the cartel's unlawful scheme; divide markets for tournaments by manipulating tournament schedules with respect to geographic location and calendar dates, and awarding top-tier tournament sanctions without regard to competitive merit; and impose other rules and policies that will restrain trade and enhance the ATP's monopoly power in the relevant markets related to professional men's tennis tournaments. Plaintiffs allege that these anticompetitive actions have the purpose and will have

3

the effect of enriching members of the Brave New World cartel and the ATP itself, at the expense of Plaintiffs, other market participants, and consumers.

**Defendants' Allegations**: In operating a worldwide men's professional tennis tour in over 30 countries, it is (and has long been) core to ATP's operations to, among other things, develop, and implement a tour format, establish and sanction various tiers of tournaments, establish standards for players' commitments to events, develop an annual calendar, promote and market ATP tennis, and otherwise seek to enhance the attractiveness and popularity of ATP tennis to consumers, including fans, telecasters, advertisers, and sponsors. Despite having been members of ATP since its inception in 1990, and having endorsed and benefited from the rules and operations of the ATP tour, the crux of Plaintiffs' complaint is that they may be sanctioned, beginning in 2009, in one tier rather than in another. That complaint has nothing to do with antitrust or fiduciary duty; rather it has only to do with their disappointment regarding how various necessary choices within the scope of ATP's clear authority may affect them individually.

On May 4, 2007, Defendants filed and served an answer to each complaint, denying all the material allegations of the complaints, and denying that they have entered into any agreement or engaged in any conduct violative of the antitrust laws or any other applicable law. Moreover, Plaintiffs' claims – which must be analyzed under the rule of reason – fail on numerous grounds, including, among other things, Plaintiffs have not suffered antitrust injury, Plaintiffs cannot establish any harm to competition or that Defendants' alleged conduct tends to create a monopoly or create a dangerous probability of creating a monopoly in any relevant market. Defendants' conduct in operating a worldwide men's professional tennis tour, in an extremely competitive sports and entertainment marketplace, is reasonable and pro-competitive,

4

ATP's internal decisions are not subject to Section 1 of the Sherman Act, and ATP does not have market power in any properly defined market. Defendants also reject Plaintiffs' alleged relevant markets. Defendants further contend that there is no basis for an independent claim against the two individual defendants for allegedly performing their respective duties as directors (as to both) and ATP's Chief Executive Officer (as to Mr. de Villiers). Defendants have not asserted any counterclaims.

3.    **Identification of the Issues.**  The general issues in dispute in both actions include:  (a) whether implementation of the ATP's Brave New World plan unreasonably restrains trade in violation of Section 1 of the Sherman Act; (b) whether implementation of the Brave New World plan would create, maintain, or attempt to create or maintain an unlawful monopoly in violation Section 2 of the Sherman Antitrust Act; (c) whether Defendants have tortiously interfered with contractual relationships or prospective contractual relationships through their implementation of the Brave New World Plan; (d) whether the individual defendants in the Monte-Carlo Litigation, defendants de Villiers and Pasarell, violated their fiduciary duties by supporting the adoption and implementation of the Brave New World plan; (e) whether any plaintiff has suffered antitrust injury; (f) whether the Hamburg and/or Monte-Carlo plaintiffs are entitled to any damages and injunctive relief enjoining Defendants from implementing the Brave New World plan; and (g) whether the Defendants' defenses bar any of the claims of the Hamburg plaintiffs and/or the Monte-Carlo plaintiffs, in whole or in part.

4.    **Narrowing of Issues.**        The parties have not identified any opportunities for narrowing the issues at this time.  As the cases progress, the parties may request leave to file motions for summary judgment or motions *in limine* that may reduce the number of issues to be decided at trial.  In the Proposed Coordinated Scheduling Order, the parties jointly agreed to a

deadline for the filing of summary judgment motions of December 14, 2007. See Exhibit A §
10.

5.    **Relief.**    The Hamburg plaintiffs seek: (a) a damages award, to be trebled
pursuant to 15 U.S.C. § 15(a), against Defendants for their violations of Sections 1 and 2 of the
Sherman Act; (b) a damages award for tortious interference with existing contractual
relationships and/or tortious interference with current and prospective business relationships and
prospective economic advantage; (c) an award of punitive damages; (d) a declaratory judgment
that the Brave New World plan is unlawful in violation of Sections 1 and 2 of the Sherman Act;
(e) a judgment preliminarily and permanently enjoining Defendants from implementing the
Brave New World plan and from retaliating against the Hamburg plaintiffs for having initiated
its action; (f) an award of costs, including reasonable attorney's fees, pursuant to 15 U.S.C.
§ 15(a); and (g) an award of pre-judgment and post-judgment interest.

The Monte-Carlo plaintiffs seek: (a) a judgment preliminarily and permanently
enjoining Defendants from implementing the Brave New World plan for the 2009 men's
professional tennis season and beyond; (b) a declaratory judgment that the Brave New World
plan is unlawful in violation of Sections 1 and 2 of the Sherman Act; (c) a damages award, to be
trebled pursuant to 15 U.S.C. § 15(a), against Defendants for their violations of Sections 1 and 2
of the Sherman Act; (d) an award of punitive damages against Defendants for violations for
breach of fiduciary duties owed to the Monte-Carlo plaintiffs; (e) a damages award against
defendants de Villiers and Pasarell for their violations of their fiduciary duties; (f) a declaratory
judgment that defendants de Villiers and Pasarell are not entitled to indemnification under the
ATP Bylaws or 8 Del. Code § 145 for any monetary judgment entered against defendants de
Villiers and Pasarell or for any legal fees incurred by defendants de Villiers and Pasarell in

6

connection with defense of these actions; and (g) an award of costs, including reasonable attorney's fees, pursuant to 15 U.S.C. § 15(a).

Defendants deny that Plaintiffs are entitled to any relief on all of their claims.

6.    **Amendment of Pleadings.**    In Section 6 of the Proposed Coordinated Scheduling Order, the parties have agreed upon a deadline of July 9, 2007 for the amendment of pleadings. See Exhibit A § 5.

7.    **Joinder of Parties.**    In Section 6 of the Proposed Coordinated Scheduling Order, the parties have agreed upon a deadline of July 9, 2007 for the joinder of additional parties. See Exhibit A § 5. The plaintiffs in the Hamburg Litigation contend that it may be appropriate to join certain ATP Directors and/or other not-yet-identified alleged co-conspirators of the ATP as defendants. Defendants reserve their right to object to such joinder. As discussed more fully in Paragraph 12 below, the Hamburg Litigation plaintiffs seek depositions relating to such joinder, to which Defendants have raised certain objections.

8.    **Discovery.**    In the Proposed Coordinated Scheduling Order, the parties have agreed that discovery in both actions should be coordinated and generally proceed in accordance with the Federal Rules of Civil Procedure, the Local Rules of this Court, and the individual rules of the Honorable Gregory M. Sleet.

With respect to interrogatories, the parties have agreed that each side (Plaintiffs constituting one side and Defendants constituting the other side) be allowed to serve 50 interrogatories, including all discrete subparts. See Exhibit A § 6(a)(ii).

With respect to depositions, the parties have agreed that each side (Plaintiffs constituting one side and Defendants constituting the other side) be allocated one hundred and seventy-five (175) hours to depose fact witnesses, including Rule 30(b)(6) witnesses. The

parties have based this figure upon an assumption that each side will seek to take between fifteen

(15) and twenty (20) fact witnesses. For the depositions of up to four (4) "key players," as

identified in Section 3(a)-(c) in the Proposed Coordinated Scheduling Order, the time limits in

Rule 30(d)(2) may be extended to two days or fourteen hours. For all other witnesses, the parties

believe that seven (7) hours should be sufficient, but that should any party believe that it has a

need to extend the deposition for a non-key player deposition, the parties shall meet and confer

and attempt to reach agreement regarding such request. The calculation of "hours" shall include

only actual testimony and shall exclude breaks, lengthy attorney colloquy and translations. The

parties have agreed to reasonably accommodate witness and attorney schedules and have agreed

to endeavor to hold the majority of "key player" and expert depositions in Wilmington or New

York. See Exhibit A § 6(a)(iii).

       The parties have proposed the following pre-trial schedule in the Proposed

Coordinated Scheduling Order, and have agreed to abide by that schedule pending the Court's

consideration of the Proposed Coordinated Scheduling Order:

| Event | Joint Proposal |
|---|---|
| **Fact Discovery** | |
| Exchange Initial Disclosures | May 4, 2007 |
| Motion to Amend Pleadings | July 9, 2007 |
| Motion to Join Additional Parties | July 9, 2007 |
| Completion of Fact Discovery - all discovery requests must be served so as to be completed by this date | October 15, 2007 |
| **Expert Discovery** | |
| Opening Expert Reports | October 15, 2007 |
| Answering Expert Reports | November 2, 2007 |
| Rebuttal Expert Reports | November 14, 2007 |
| Completion of Expert Discovery | December 7, 2007 |
| **Dispositive Motions** | |
| Opening Briefs and Affidavits for Summary Judgment | December 14, 2007 |
| Response Briefs and Affidavits | January 21, 2008 |

| Reply Briefs and Affidavits | February 4, 2008 |
| --- | --- |
| **Trial Phase** | |
| Motion to Consolidate (if any) | Opening: February 15, 2008;<br><br>Answering Briefs: February 29, 2008;<br><br>Reply Briefs: March 7, 2008 |
| Plaintiff Draft re: Joint Pretrial Order | January 28, 2008 |
| Defendant Comments re: Joint Pretrial Order | February 15, 2008 |
| Submission of Joint Pretrial Order | March 7, 2008 |
| Motions *in limine* | Opening: February 8, 2008;<br><br>Response: February 29, 2008;<br><br>Replies March 7, 2008 |
| Pre-trial Conference | March 14, 2008 |
| Trial | March 25, 2008 |

9.    **Estimated Trial Length.**    At this time, the parties estimate approximately three weeks (15 business days) for a consolidated trial of these actions. Defendants believe that the cases should be consolidated for trial. Plaintiffs in the Hamburg Litigation have no objection to consolidation. Plaintiffs in the Monte-Carlo Litigation have reserved their position on this subject. If the cases are not consolidated for a joint trial, the parties have agreed that Defendants shall not be burdened with simultaneous, overlapping, or back-to back trials in the Hamburg and Monte-Carlo Litigations. At the present time, the parties have not identified any specific means of reducing the length of trial or expediting the presentation of evidence. The parties will endeavor to meet and confer on this issue at an appropriate time closer to trial. At this time, no determination has been made with respect to bifurcation of any issues for trial.

10.    **Jury Trial.**    The parties in both actions have demanded a jury trial.

9

11.   **Settlement.**   Monte Carlo and Hamburg have had separate preliminary settlement communications with the Defendants. At this time, no settlement has been reached in either case. The parties have agreed in the Proposed Coordinated Scheduling Order that these cases should be referred to Magistrate Judge Thynge for the possibility of exploring a settlement. See Exhibit A § 8.

12.   **Other Matters.**   The parties have a pending request that the Court consider using the Proposed Coordinated Scheduling Order as the basis for its controlling Order in both actions so that both cases may be ready for trial in the first third of 2008, if they are not decided by prior motion. In addition, to the extent that the parties are unable to resolve certain electronic discovery issues, the parties may wish to confer with the Court on an appropriate protocol.

The parties are in the process of negotiating a Proposed Stipulated Protective Order governing the use of confidential discovery materials in both litigations and, at the proper time, expect to submit the proposed order for the Court's consideration.

Finally, Plaintiffs have noticed a Rule 30(b)(6) deposition of ATP Tour, Inc. relating, *inter alia*, to certain transaction involving Defendants. Plaintiffs contend that this deposition is proper and should proceed immediately pursuant to the Federal Rules of Civil Procedure, and because the requested discovery is necessary given the pending July 9 deadline for further amendments. Defendants contend that such a deposition is not appropriate at this time and have other objections. The parties are working cooperatively in the hope that they may resolve this issue without Court involvement in accordance with Rule 26(f) of the Federal Rules of Civil Procedure, the applicable Local Rules, and this Court's guidelines.

13.   **Confirmation of Rule 26(f) Teleconference.**   Counsel for the parties have conferred regarding each of the topics listed above. Should the Court have any questions

regarding the information set forth above, counsel for all parties are prepared to provide the additional information needed to address the Court's concerns.

Dated:  June 8, 2007

YOUNG CONAWAY STARGATT & TAYLOR LLP


By:  /s/ Chad S. C. Stover
      C. Barr Flinn (No. 4092)
      Chad S.C. Stover (No. 4919)
      The Brandywine Building
      1000 West Street, 17th Floor
      Wilmington, DE 19801
      (302) 571-6692
      bflinn@ycst.com
      cstover@ysct.com


BARNES & THORNBURG LLP
Robert D. MacGill (admitted *pro hac vice)*
Hamish S. Cohen (admitted *pro hac vice*)
11 South Meridian Street
Indianapolis, Indiana 46204
(317) 236-1313

Daniel Gravelyn
300 Ottawa Avenue
Suite 500
Grand Rapids, Michigan 49503
(616) 742-3930

Attorneys for Deutscher Tennis Bund (the German Tennis Federation) and the Rothenbaum Sports GMBH

POTTER ANDERSON & CORROON LLP


By: /s/ Philip A. Rovner
       Philip A. Rovner (#3215)
       Hercules Plaza
       P.O. Box 951
       Wilmington, Delaware 19899
       (302) 984-6000
       provner@potteranderson.com

       SIDLEY AUSTIN LLP
       Alan M. Unger (admitted *pro hac vice*)
       John J. Lavelle (admitted *pro hac vice*)
       787 Seventh Avenue
       New York, New York 10019
       (212) 839-5300

Attorneys for Monte-Carlo Country Club and Société Monégasque pour L'Exploitation du Tournoi de Tennis

---

ASHBY & GEDDES

By: /s/ Philip Trainer, Jr.
       Lawrence C. Ashby (I.D. #468)
       Philip Trainer, Jr. (I.D. #2788)
       Tiffany Geyer Lydon (I.D. #3950)
       222 Delaware Avenue, 17th Floor
       Wilmington, Delaware 19899
       (302) 654-1888
       (302) 654-2067 (Fax)

       PROSKAUER ROSE LLP
       Bradley I. Ruskin (admitted *pro hac vice*)
       Colin Underwood (admitted *pro hac vice*)
       Jennifer R. Scullion (admitted *pro hac vice*)
       1585 Broadway
       New York, New York 10036
       (212) 969-3655
       (212) 969-2900 (fax)

Attorneys for ATP Tour, Inc., Etienne de Villiers and Charles Pasarell

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---

| | | |
|---|---|---|
| DEUTSCHER TENNIS BUND (GERMAN TENNIS FEDERATION) and ROTHENBAUM SPORTS GMBH TENNIS, | : : : : | Civil Action No. 07-178 (GMS) |
| Plaintiffs, | : : | |
| - against - | : : | |
| ATP TOUR, INC., JOHN DOE 1, JOHN DOE 2 JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, and JOHN DOE 9, | : : : : | |
| Defendants. | : | |

---

| | | |
|---|---|---|
| MONTE-CARLO COUNTRY CLUB and SOCIÉTÉ MONÉGASQUE POUR L'EXPLOITATION DU TOURNOI DE TENNIS, | : : : : | Civil Action No. 07-198 (GMS) |
| Plaintiffs, | : : | |
| - against - | : : | |
| ATP TOUR, INC., ETIENNE DE VILLIERS, and CHARLES PASARELL, | : : : | |
| Defendants. | : | |

---

### [PROPOSED] COORDINATED SCHEDULING ORDER

WHEREAS, the parties in *Deutscher Tennis Bund et al. v. ATP Tour, Inc., et al.*,

07cv178 (GMS) (the "Hamburg Litigation"), are plaintiffs Deutscher Tennis Bund and

Rothenbaum Sports GMBH (collectively, the "GTF") and defendant ATP Tour, Inc.;

WHEREAS, the parties in *Monte-Carlo Country Club et al. v. ATP Tour, Inc. et*

*al.*, 07cv198 (GMS) (the "Monte-Carlo Litigation"), are plaintiffs Monte-Carlo Country Club

and Société Monégasque pour L'Exploitation du Tournoi de Tennis (collectively, "Monte-Carlo") and defendants ATP Tour, Inc., Etienne de Villiers, and Charles Pasarell ( collectively "ATP");

WHEREAS, GTF, Monte Carlo, and ATP (collectively, the "Parties"), believe that the Hamburg Litigation and the Monte-Carlo Litigation arise from common factual circumstances and are related;

WHEREAS, the Parties believe that the interests of judicial economy and the efficient uses of the Parties' and the Court's resources would be best served by coordination of discovery in the Hamburg Litigation and the Monte-Carlo Litigation;

WHEREAS, the Parties believe that the interests of justice and the Parties would best be served by a schedule under which these actions may be tried within the first third of 2008;

WHEREAS, the Parties believe that, in order to try these actions within the first third of 2008, it is essential that an expedited pre-trial schedule be established with firm dates that the Parties must meet, absent a showing of good cause;

WHEREAS, the Parties believe in principle that the Hamburg Litigation and the Monte-Carlo Litigation should be consolidated for a joint trial on any issues common to both cases, and are engaged in discussions about what issues may be appropriate for consolidation;

NOW THEREFORE, on this _____ day of _____, 2007, the Court having conducted a Rule 16 Scheduling Conference pursuant to Local Rule 16.2(b) on _____, 2007, and the Parties, having determined after discussion that this matter cannot be resolved at this juncture by settlement, voluntary mediation, or binding arbitration:

IT IS SO ORDERED that:

1.       **Coordination of Actions**:  The Hamburg Litigation and the Monte-Carlo Litigation shall be coordinated for discovery and pre-trial purposes.

2.       **Rule 26(a) Initial Disclosures**:  The Parties shall make their initial disclosures pursuant to Federal Rules of Civil Procedure 26(a) on or before **May 4, 2007**, provided, however, that the requirements of Rule 26(a)(1)((B) are waived.

3.       **Litigation Hold**:  To the extent they have not done so already, the Parties shall promptly suspend their routine document retention/destruction policies and put in place a "litigation hold" to ensure the preservation of relevant documents within their possession, custody, or control, including, without limitation, any relevant e-mail accounts (both work-related and personal), computer hard drives, accessible computer back-up tapes, and electronic storage devices, whether readily accessible or otherwise, upon which documents within the possession, custody, or control of the Parties, or the Parties' "key players," are stored or likely to be found.  For purposes of this Scheduling Order:

(a)       The GTF's "key player(s)" are (i) tournament director Walter Knapper; (ii) Dr. Georg von Waldenfels; (iii) the officers and the members of the board of directors or supervisory board, if any, of each of the GTF Plaintiffs; (iv) the immediate predecessors of anyone in categories (i) thru (iii); and (v) any individual(s) that anyone in categories (i) thru (iv) have supervised or currently supervise directly, including their assistant(s), if any;

(b)       Monte-Carlo's "key player(s)" are (i) tournament director Zeljko Franulovic;  (ii) Elizabeth Ann de Massy; (iii) the officers and the members of the board of directors or supervisory board, if any, of each of the Monte Carlo Plaintiffs; (iv) the immediate

3

predecessors of anyone in categories (i) thru (iii); and (v) any individual(s) that anyone in categories (i) thru (iv) have supervised or currently supervise directly, including their assistant(s), if any; and

       (c)    The ATP's "key players(s)" are (i) Etienne de Villiers; (ii) Charlie Pasarell; (iii) Graham Pearce; (iv) Jacco Eltingh; (v) Perry Rogers; (vi) Iggy Jovanovic; (vii) Flip Galloway; (viii) Phil Anderton; (ix) Horst Klosterkemper; (x) Brad Drewett; (xi) Mark Young; and (xii) Richard Davies; (xiii) the immediate predecessors of anyone in categories (i) thru (xii); and (xiv) any individual(s) that anyone in categories (i) thru (xiii) have supervised or currently supervise directly, including their assistant(s), if any. For the avoidance of doubt, the "litigation hold" shall apply to any "ATP Properties" documents within ATP.

       (d)    Notwithstanding the above, any individuals who are not currently officers, directors, supervisory board members, or employees of the GTF Plaintiffs, the Monte Carlo Plaintiffs, or ATP shall be excluded from the respective definition of "key players" above, although each Party's duty to issue a Litigation Hold and preserve relevant documents under this paragraph shall apply to any relevant documents created or obtained by their former officers, directors, supervisory board members, or employees to the extent that such documents were in the Party's possession, custody, or control when the duty to preserve relevant documents for purposes of these Litigations came into effect, or thereafter.

       (e)    The foregoing designation of "key players" is made solely for purposes of this Scheduling Order and shall not be used for any other purposes, including for any evidentiary purpose.

       4.    ATP shall respond to the Complaint in each of the Hamburg Litigation and the Monte Carlo Litigation on or before **May 4, 2007**.

5.    **Joinder of Other Parties and Amendment of Pleadings**:  All motions to join other parties shall be filed on or before **July 9, 2007** and all motions to amend the pleadings shall be filed on or before **July 9, 2007**.  If the pleadings are amended or additional parties are joined, the Parties shall meet and confer to try to reach agreement on reasonable modifications, if necessary, to this Scheduling Order, Hamburg having stated that it may seek to join certain ATP Directors as defendants.  ATP does not agree that any ATP Directors should be joined and reserves its right to oppose any request for joinder, but it has no present belief that, if such ATP Directors are properly joined, that their joinder would require any material change to this Scheduling Order.

6.    **Discovery**:

(a)    **Fact Discovery:**  All fact discovery in this case shall be initiated so that it will be completed on or before **October 15, 2007**.  Said discovery shall proceed notwithstanding the filing or pendency of any Rule 12 or Rule 56 Motion by any Party.  The Parties may serve their initial document requests, interrogatories, and deposition notices by **May 2, 2007**; service of all discovery requests shall be by e-mail (in Microsoft Word format for ease of preparing responses and objections).

(i) To ensure the orderly and expeditious conduct of fact discovery under this Scheduling Order, the parties shall produce all documents, electronic or otherwise, responsive to any document request served by **May 2, 2007**, except to the extent that request is objected to, beginning **May 25, 2007** and continuing on a rolling basis through **June 25, 2007**. The Parties shall produce all documents, electronic or otherwise, responsive to any subsequent document request, except to the extent that request is objected to, within the 30 days of service of the request. The Parties agree that all electronic documents shall be produced in a format

5

sufficient to allow the receiving party to conduct full text searches (including searches of the

body of such documents and attachments, as well as searches for the author, recipient, copy

recipient, date, or the subject of all email or instant message communications) without further

conversion or coding by the receiving party, and that the producing party shall preserve the

native format of such electronic documents so that the native file may be produced upon a

showing of good cause by the requesting party.  Accordingly, the Parties agree to produce

electronic documents subject to the following protocol:

>    (1)    Where the original document is not in color, the producing party
>    shall produce single-image TIFF files for each page of electronic
>    documents (in 300 DPI, Group IV TIFF Images);
>
>    (2)    Where the original document is in color, the producing party shall
>    produce a JPEG file;
>
>    (3)    The producing party shall produce a corresponding LFP File that
>    permits the receiving party to determine which TIFF Images constitute a
>    single electronic document;
>
>    (4)    The producing party shall also produce an accompanying
>    document level OCR Text File ("txt file") that shall be named and shall
>    correspond to the Bates Numbers or TIFF Image Key Numbers of the
>    associated electronic document; and
>
>    (5)    All txt files shall capture and include all text-based data (or OCR-
>    readable text on any image file) reflected on the corresponding TIFF
>    Image file.

Should any technical problems arise in the production or receipt of electronic documents, upon

notice from the receiving party, the producing party shall promptly communicate with its

Information Technology or Litigation Support Staff or, if applicable, its respective vendor, to

assist the receiving party in attempting to resolve any such problem.  To the extent that a Party

produces responsive documents in any language other than English, the producing party shall

also produce any existing English translation that the producing party (or its counsel) has of such

document at the time of production (including any translation created for purposes of the

litigation); such production of translations shall not be deemed a waiver of any work-product protection or attorney-client privilege.

(ii) Each side (GTF and Monte Carlo together constituting one side and ATP constituting the other side) shall be allowed to serve fifty (50) interrogatories, including discrete subparts. This limit may be altered upon a showing of good cause.

(iii) Each side also shall have a total of one hundred and seventy-five (175) hours to depose fact witnesses, including Rule 30(b)(6) witnesses. This figure is premised on the assumption that each side will seek to take between fifteen and twenty fact-witness depositions and that, for the depositions of up to four (4) "key players," on each side, the time limits in Rule 30(d)(2) may be extended to two days or fourteen hours. To the extent that any Party believes it has a need to extend the deposition time limit for any other witness, the Parties shall meet and confer and attempt to reach an agreement regarding such request. The Parties shall reasonably accommodate witness and lawyer schedules and shall endeavor to hold the majority of "key player" and expert depositions in Wilmington or New York. The calculation of "hours" shall include only actual testimony and shall exclude breaks, lengthy attorney colloquy, and translations.

(b)     **Expert Discovery:** Expert discovery in this case shall be initiated so that it will be completed on or before **December 7, 2007**. Opening expert reports shall be served no later than **October 15, 2007**. Answering expert reports shall be served no later than **November 2, 2007**. Rebuttal expert reports, if any, shall be served no later than **November 14, 2007**. Expert witnesses may be noticed to be deposed for up to one (1) seven-hour day, subject to an extension of up to one (1) additional seven-hour day upon agreement of the Parties or for good cause shown.

(c)    **Discovery Disputes:** Should counsel find they are unable to resolve a discovery or scheduling matter, a representative from each party in the matter shall be on the line when contacting Chambers at (302) 573-6470 to schedule a teleconference. Not less than forty-eight hours prior to the teleconference, the parties shall file with the Court, via electronic means (CM/ECF), a **joint, non-argumentative** letter agenda not to exceed two (2) pages in length, exclusive of exhibits, outlining the issue(s) in contention. A sample letter can be located on this Court's website at www.ded.uscourts.gov. After the parties have had three (3) discovery teleconferences, they will be required to file a joint letter showing good cause why the Court should permit any subsequent discovery teleconference.

7.    **Confidential Information and Papers Filed Under Seal**: Should counsel find that it will be necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, they should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court within ten (10) days from the date of this Order. When filing papers under seal, counsel should deliver to the Clerk an original and two copies of the papers.

**If, after making a diligent effort, the parties are unable to agree on the contents of the joint proposed protective order, then they shall follow the dispute resolution process outlined in paragraph 6(c).**

8.    **Settlement Conference**: Pursuant to 28 U.S.C. § 636, this matter is referred to the United States Magistrate for the possibility of exploring a settlement. The parties agree that the possibility of settlement may be enhanced by such referral. The parties shall contact Magistrate Judge Thynge to schedule a settlement conference with counsel and clients in late June or July 2007, subject to the availability of the Court and counsel.

9.      **Consolidation for Trial Purposes**:  The Parties shall meet and confer by February 4, 2008 to determine what issues, if any, are common to both the Monte-Carlo Litigation and Hamburg Litigation and should be consolidated for a joint trial.  If, after the meet and confer, any Party believes that there are additional common issues that should be consolidated for trial purposes as to which the parties could not reach an agreement, the Party may serve a motion to consolidate those additional common issues for a joint trial on or before **February 15, 2008**.  Answering briefs opposing such motions shall be served and filed on or before **February 29, 2008**.  Reply briefs, if any, in further support of such motions shall be served and filed on or before **March 7, 2008**.  If the cases are not consolidated for a joint trial, Defendants may seek to modify the remainder of this Scheduling Order with the understanding that Defendants shall not be burdened with simultaneous, overlapping, or back-to-back trials in the Hamburg and Monte-Carlo Litigations.

10.      **Case Dispositive Motions**:  In view of the Parties' agreement that interests of justice and the Parties would best be served by a schedule permitting the trial of these actions within the first third of 2008, and the Court's entry of this expedited pre-trial Scheduling Order to ensure that the actions are tried within the first third of 2008, neither GTF nor Monte Carlo has any present intent to file any motion for preliminary injunction or other interim relief. Should the circumstances change and a motion for such relief is filed, the Parties shall confer in good faith to propose modifications to this Scheduling Order.  All case dispositive motions and opening briefs and affidavits, if any, in support of such motions, shall be served and filed on or before **December 14, 2007**.  Answering briefs and affidavits opposing such motions shall be served and filed on or before **January 21, 2008**.  Reply briefs and affidavits, if any, in further support of such motions shall be served and filed on or before **February 4, 2008**.  Any request

9

for extensions of time as set forth in this Scheduling Order **must** be accompanied by an explanation or such request will be denied.

11.    **Applications by Motion**: Except as provided in this Scheduling Order or for matters related to scheduling, any application to the Court shall be by written motion, filed, via electronic means (CM/ECF).  Unless otherwise requested by the Court, counsel shall **not** deliver copies of papers or correspondence to Chambers.  Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

12.    **Oral Argument**: If it believes that oral argument is necessary, the Court will schedule a hearing pursuant to Local Rule 7.1.4.

13.    **Pretrial Conference**:  On **March 14, 2008**, beginning at _____ a.m., the Court will hold a Pretrial Conference in Chambers with counsel.  Unless otherwise ordered by the Court, the parties should assume that filing the Joint Pretrial Order satisfies the pretrial disclosure requirement in Federal Rule of Civil Procedure 26(a)(3).  A sample form of Pretrial Order can be located on this court's website at www.ded.uscourts.gov.  On **January 28, 2008**, plaintiffs' counsel shall forward to defendants' counsel a draft of the Pretrial Order containing the information plaintiffs propose to include in the Pretrial Order.  By **February 15, 2008**, defendants' counsel shall, in turn, provide to plaintiffs' counsel any comments on plaintiffs' draft(s), as well as the information that defendants propose to include in the proposed Pretrial Order.  The Parties shall file with the Court the **joint** proposed Final Pretrial Order with the information required by the form of the Final Pretrial Order which can be located on this Court's website at www.ded.uscourts.gov on or before **March 7, 2008**.

14.    **Motions *in limine***:  No party shall file more than five (5) motions *in limine*.  Opening briefs on all motions *in limine* shall be served by **February 8, 2008**.

10

Answering briefs in opposition to any motions *in limine* shall be served on or before **February 29, 2008**.  Reply briefs in further support of any motions *in limine* shall be served on or before **March 7, 2008**.  All briefs (opening, answering, and reply) on all motions *in limine* shall be filed on **March 7, 2008**.  Opening and answering briefs shall not exceed five (5) pages and reply briefs shall not exceed three (3) pages.

15.    **Trial-Ready Date**:  Both cases shall be trial-ready by **March 25, 2008**.

16.    **Scheduling**:  The parties shall contact Chambers, at (302) 573-6470, only in situations where scheduling relief is sought and only then when ALL participating counsel are on the line for purposes of selecting a new date.

Dated: _____            _____

The Honorable Gregory M. Sleet
United States District Judge

793148

11